23-7083, Bailey v. Beale. Mr. Wood for the appellant. May it please the court, my name is Scott Wood. I'm an attorney from Tulsa, Oklahoma, and I'm here today to represent the appellant, Marcus Beale, in his appeal from an order of the District Court of the Eastern District of Oklahoma. The facts of the case are basically this, that Officer Beale was on duty on the morning of September 21st, 2019 when he got radio assigned to a call to meet a Megan Timmons who had been ejected from an apartment where she had been staying. The person inside the  Jeffrey Peterson, according to her, had kept some of her things and maybe taken some money from her during the night. Officer Beale got enough information from her to believe that she had a legal right to be in that apartment, so he escorted her up to the front door so he could stand by while she tried to recollect some of her belongings from that apartment. When they got up to the front door, it was a little wobbly. She had told him that a few, I think, days earlier, she had had to kick the door open and so that it wouldn't shut all the way. Don't we have a couple of different points of view at play here on what happened? You know, the core legal issue is whether there's a disputed material fact question lurking for which qualified immunity would be impermissible at this stage, and the district court found that there were disputed facts about what preceded the officer's entry into the apartment and the ensuing scuffle. How do you overcome that finding by the district court? Is it basically the clear error by the district court or that there's, if we look at the body cam, there's no alternative version of the facts that could be accepted here? How do you wiggle out of that conundrum? The court did note that there was no body-worn camera. We had the first backing officer had her camera on, and so what happens at the door, according to Beal, is that he held his hand up to hold this trim from where the door had been kicked open earlier and that Mr. Peterson slammed the door on his arm. Ms. Timmons, who was preceding her... Her story is slightly different, isn't it? I'm sorry? Her story is different. Ms. Timmons says that didn't happen, but the door instead hit her and knocked her into Officer Beal. Okay, why don't we need a jury to resolve that conflict? I'm sorry, Judge. Why don't we need a jury to resolve that conflicting version of what happened? I'll tell you why, because both those things could have happened, and the district court found that what Ms. Timmons said happened, happened. And that's not being controverted by the plaintiff or appellee, and there's no way, two ways about it. I mean, that constitutes a crime that occurred right in front of Officer Beal. Now, his reason for going in there was that he intended to make an arrest for an assault and battery on himself, but there was also probable cause for the crime that had been committed against Ms. Timmons, which he witnessed, and arguably against him, because under transferred intent, she gets hit by the door and knocked into Officer Beal. The district court made that finding. Counsel, did you make that argument in district court? I did not, and I'll tell you the reason why. I put my eggs in the basket of Officer Beal, because this statement by Timmons about how it happened was never revealed in the criminal investigation, the interviews that she gave to the police, and so forth. When the backing officer, Officer Canada, arrives, her body camera's on, and the first thing that Beal says is he slammed the door on my arm and told me if I come in there, he's going to treat me like an intruder. Well, but Ms. Timmons gave her version of what happened in her deposition, and you did have that in hand, right? No, not at that, I mean, by the time we wrote our motion for subject. Well, that's what I mean. You had an opportunity to make this argument. We absolutely did. And you didn't do it. Yeah. As a lawyer, I made the decision that I believed the body-worn camera video, where he makes that spontaneous utterance, before we know there's going to be a fight, before we know there was a shooting, or any of those things, Beal makes that spontaneous utterance. Now, I had no idea that Timmons was going to say that that never occurred. And, but you're right, we did not argue that that occurred in our motion for summary judgment, that that was a separate crime. We argued some other crimes that could have potentially been charged against Mr. Peterson, and the Tenth Circuit case law on probable cause reflects the Supreme Court standard from Davenport v. Alford's 2004 case that says, if you have probable cause to charge for anything, probable cause will be found, even if they're not charged with it. Well, you also acknowledge several times in your brief that if there was probable cause to arrest, the claim is unlawful entry. So, you would need, or Officer Beal would need, exigent circumstances. That is correct. And why isn't that an issue for the jury? Well, that was never analyzed by the court. They just found that, because Timmons said there was, that never happened, that his arm never got slammed, there was no probable cause, which is the springboard for making entry under an exigent circumstance. Right, so would it make any sense to remand for the district court to address exigent circumstances because it didn't address exigent circumstances? It did not. We argued that we had the right to enter and make an arrest under those circumstances. My question was whether we should remand that issue. Well, I think, based on the record, that, with the facts that we have, that we take as the district court found them, that there were exigent circumstances for him to make that arrest. Hot pursuit. No, no, it isn't an exigent circumstance to make an arrest. It's an exigent circumstance to enter an apartment without a warrant. Well taken, yes. Those are two issues, right? I mean, the arrest is relevant, obviously. It is. But there's still a little more to it. I would agree with you. The record reflects that Beal was concerned about Ms. Timmons and did not want to leave because of the way things had unfolded. Or simply, when he slammed the door, just turn it away, turn around, walk it away. Instead, he called for backup. He had decided by that time he was going to make an arrest and he was going to have to go inside the house to make that arrest because Peterson had blocked the door. And if you look at the most recent case law from the Supreme Court on warrantless entry into a home, and I think that's the Lange versus California case, you know, it lists out a number of things that can warrant warrantless entry and that is whether the person could escape. And it's in the record that there was a back door to this apartment. He was by himself at that time. And that he was afraid or he posed a threat to either himself or Ms. Timmons because of his statement, I'll shoot you like an intruder. So, from that standpoint... Is that an undisputed fact? Sorry? I'll shoot you like an intruder. Is that an undisputed fact? I don't, yeah, I believe it is undisputed. Did Timmons ratify that statement? Yes. Okay. Yes. Didn't you argue below that Officer Beal had permission, parent permission to enter the apartment? What happened to that? Yeah, you know, the court found that those facts were kind of muddled whether or not she even had the power to grant consent for him to enter, but found that after the door was slammed, she made some statements to Officer Beal. Hey, just forget about it. I don't want to do anything. And that's when she runs away and hides behind a tree. So you've abandoned that argument? Well, you know, we had consent up until the time the door was slammed and then she said forget about it. We maintain that Beal had a reasonable belief that she had a right to go in that apartment because of her history of staying there over the last several months. Well, is that an issue for us or is it not? No, because I think after there's probable cause for the arrest, we can forget about the consent part of it. I mean, he maybe mistakenly believed that she had a right to go into the house. But when she starts in, the door slammed on her and then she says forget about it. I don't want to do this. So, the consent goes away and that's where the probable cause of mortless entry analysis would kick in. Can I just ask you about the other part of qualified immunity, the clearly established law step. Do you agree that the state argued clearly established law in the district court, even briefly? Oh, yes. Yes, on all issues, the excessive force and including the entry. Absolutely. Yeah, and of course, we think that the appellee's response to that was lacking. I think they cited one case without analysis, U.S. versus Belisle. I believe it's how you pronounce the case and offered no other case law to show the court what the clearly established law was on that issue. And we think that they just failed in their in their heavy burden to meet qualified immunity. So, I'll reserve the rest of my time. Okay. Thank you. You may. Mr. Adams, when are we ready? Yes, Your Honor. May it please this honorable court. As Your Honor. Please identify yourself. I'm sorry, Attorney Jared Adams on behalf of Mr. Bailey. Mr. Bailey in this case, the plaintiff. As Your Honors have pointed out, this isn't a case that should be decided on appeal or that should be granted qualified immunity. This is a question of fact that exists in a jury should decide. I want to start by relaying the facts of the case because they're very important. Ms. Timmons and Mr. Peterson were in an off-again, on-again relationship that was fueled by a meth addiction that they both had. Mr. Peterson had discovered that Ms. Timmons was stepping outside of their relationship with another man and he asked her to leave. That morning when he asked her to leave, he placed the things that she had with her outside of the house with her. She had claimed that there were some other items in the house left. Mr. Peterson called the police and said that I am placing her items at the back at the back step. She can retrieve those items. Mr. Beal was dispatched at this time. He comes to the residence. At the time that he comes to the residence, he does not park in front of the apartment. He does not announce himself at all. He's literally walking with Ms. Timmons to the door of this apartment with little information at all. When Ms. Timmons attempts to open the door, Mr. Peterson slams his door. He has absolutely no knowledge that any police are outside his door because he's on the phone with the dispatch. And he's explaining to dispatch. She's at my door. She's making noise. I'm gonna set her stuff outside of the apartment. He literally did everything in his power to avoid what happened. And once he realized that Beal was outside of the door, when Beal was trying to push his way into the door, he did tell Officer Beal, if you come into my house, I'm going to treat you like an intruder per Oklahoma law. And that is the law. He had absolutely no right to go into this apartment at all. This was a domestic dispute that should have been resolved as such. And it is a disputed fact. And I don't want to go as far as saying Officer Beal is a liar, but I'll just say this. What are the disputed facts? The disputed facts are the entry into the apartment. That's the crux of this case, which led to the death of Mr. Peterson. We don't have the footage of how the entry was made, but we do see the door. Right. Ms. Timmons is in front of Officer Beal. Officer Beal is alleging that he's holding up a piece of door framing. And when a door closes, it closes in his arm. Officer Beal, after the death of Mr. Peterson, was placed into an ambulance. He never complained, never said anything about his arm at all. He literally made up an excuse. And when it failed, they're back again with a new one. None of these arguments have ever been made because we would have addressed them to the district court. The district court heard arguments on this case, and they had a difficult job, your honors. None of these cases are easy. No one wins in these qualified immunity cases. But this case is not for qualified immunity. He had no right to enter that apartment. He was forewarned that he would be treated as an intruder if he came into that apartment. And he had the legal right to do so. And he was on the phone with dispatch, literally trying to resolve the situation. A jury should decide whether or not Beal is telling the truth. We have a record full of evidence, and I want to make sure I make clear before my time runs. The district court didn't make a finding that the door hit Timmons and Timmons hit Officer Beal. The district court cited to the testimony of Timmons in her deposition. Mr. Peterson isn't here to tell his version of events. The version of events that Mr. Beal says are absolutely disputed by the record. It deserves to be in front of a jury. This is one of the most difficult arguments I've ever had to make, considering that it was Mother's Day on Sunday. And the reason that this is called Bailey v. Beal is because Mr. Peterson is not here to tell his version of events. It's his mom who's brought this case. She doesn't have closure. It deserves to go to a trial in front of a jury. Counsel, let me just ask you this. We do have Ms. Timmons' account of what happened. We have her statement. We also have her deposition. And the appellant, Mr. Beal, is arguing that even if we accept her version of the fact, there was still the door pushing against her. Let's just assume, for the sake of this question, that Officer Beal had probable cause to arrest Mr. Peterson based on Ms. Timmons' account. Why doesn't that show that there was no unlawful entry into the apartment? Your Honor, when Mr. Peterson is closing his door, he has absolutely no knowledge of who exactly is entering his door. I'm asking the question, though. It's more of a legal question. We're accepting Ms. Timmons' version of the facts and assuming that that gave probable cause to arrest. If it did, then was it permissible for Officer Beal to enter the apartment? I say no, Your Honor. Okay. And why not? What's the law on that? The law is, there is no exigent circumstances for Mr. Beal to have entered that apartment. There was none. And Your Honor, just think about this for a second. I'm glad you raised this question because now I think about it even more. How can someone flee into an apartment that they never left, Your Honor? He never left the apartment. He simply closed the door of his own apartment. The law requires him to do everything he did. And if there is, this question that is posed by Your Honor should be before the jury. That should be a jury question. Did he have probable cause to enter into the apartment? Is there such thing as transferred attempt assault? I've never heard it before, especially when you don't know an officer or anyone else is out there and you're not intending to do harm. You're simply intending to close your door. It is a question that should be before the jury, whether or not there was probable cause. I argue no, Your Honor. There is no probable cause. There is no assault because Mr. Mr. Peterson is closing his door. He never took the door off the hinges and swung it at anyone. He never, never, never intended to hurt anyone at all. He's closing his door. He was frustrated at the relationship. He's closing his door. This isn't qualified immunity, Your Honor. This is a question for the jury. The jury should decide whether or not, if there was probable cause, there clearly was no exigent circumstances at all in this case. He wasn't committing a crime and he can't flee into an apartment. He never left, Your Honor. Couldn't the officer have believed that he was wrongfully holding Ms. Timmons' property, you know, kind of a version of theft? And wouldn't that give him probable cause to arrest for that arguable crime? And that brings us back to exigent circumstances as whether he could consummate the arrest with the belief that property might be destroyed or whatever. Why wouldn't that get him into the apartment? Your Honor, that's not exigent circumstances is what the plaintiff would argue in this case. And also, all Mr. Beal had to do was talk to his dispatch and he would know that Mr. Peterson was on the phone and he was setting the property outside the house. There was other facts in this case, Your Honor. I don't want to slander this officer. I'll just say this. He has displayed conduct of being a hothead and this fits right into that narrative. There was absolutely no de-escalation at all in this case. There was no, hey, Mr. Peterson needs you to come out here and talk to me at all. He immediately started to break into the door of this house because he was mad. He was mad because Peterson closed the door and refused to address him and he had the legal right to do so. I again will say this, Your Honor, these cases are tough. No one wins in these cases of qualified immunity. On the clearly established problem, what cases are you relying on? Well, Your Honor, on the clearly established, I would say this. We cite to a McDonald case, but I think that the Supreme Court case in Saucer is more important, where the Supreme Court has abandoned this two-step process of holding the Supreme Court to decide qualified immunity, addressing these different steps. It's really two prongs now, Your Honor. It is the first step of whether or not there was a constitutional right violation. And the second step is to decide whether the constitutional right was clearly established. And Your Honor, it was in this case, Your Honor. It was. It was clearly established. So Saucier is the case law that you're referring to? Along with McDonald, Your Honor, and in this case, and I'll cite the portion that we've quoted in our brief. There are no extraordinary circumstances to excuse Beals' failure to make any type of get a warrant or anything like that to go into the house. There was no flight of risk. There's no safety. Property does not equal exigent circumstances, Your Honor. And McDonald addresses this, where it talks about, you know, the clearly established element. And in this case, Your Honor, we really are, you know, shooting from a far distance because this is the first time we've ever heard this argument of it not being clearly established. It was never addressed at all on the district court level. And Your Honor, again, is it your burden to defeat qualified burden immunity to show both a constitutional violation and that it's a clearly established constitutional violation? That's your obligation in the district court. It is, Your Honor. And I think you represented that you relied on two cases below. Yes. And yet the district court didn't really seem to make a legal ruling on the clearly established prong, did it? What do we do? What do we do about that? I think, Your Honor, they did. And I think that they did so by clearly stating in his hand that there was a disputed fact here. It was a disputed fact on the version of events. Because if you are to believe, Bill, then yeah, I mean, hey, we're not here. We don't have an argument. We may lose. But there's a clearly disputed fact on the entry into the apartment or the right to enter into an apartment. Bill was. I know, but we decide cases all the time where we assume a constitutional violation. So we can grant your version of the facts and assume a constitutional violation. And yet we still have an obligation on appeal is to make the legal determination whether, based on your view of the facts, it's still clearly established enough for a reasonable officer to know beyond doubt that his violation was clear. Your Honor, my response, and I have three minutes left, my response to that, Your Honor, is that the district court got it right. It was it was it was clearly a disputed fact here. There was no right for Bill to enter into this apartment and it was clearly established that he had to have a warrant to have entered into this apartment or some exigent circumstances to do so. He had none. Did the district court analyze any of the clearly established law argument you presented, including the unpublished? Is it an unpublished case? Belial. I can't say for certain whether or not they specifically addressed the clearly established portion. Is that something that the district court should should have to do? I don't think so, Your Honor. I believe that that the disputed fact here is what reigns supreme in a constitutional rights violation. I think it's clearly established that you can't enter into someone's apartment without a warrant or exigent circumstances. And so if that is the dispute, that is a disputed fact that should be before the jury. A court shouldn't decide that whether or not with these disputed facts, Bill somehow, some way, is able to get qualified immunity based on these disputed facts. District court did its job, Your Honor. Again, I believe that when we argue this case before the district court, the district court specifically asked questions about the door and the entry of the door. They hinged on that a lot. And I believe that this is why this case was ruled in favor of the plaintiff. It deserves to be before a jury. If the jury believes that Belial had his hand stuck in the door or his new argument, that transferred intent, someone hit him, that's all a question for the jury. You decide, not qualified immunity. This man was in his own home, in his own home, on the phone with the police, a domestic dispute. He wasn't committing a crime. He never walked outside of the apartment, so he never fleed back inside of it. This should be before a jury, and this case should have closure. If Your Honor has no other questions, I'll rest on my brief. Thank you, counsel. Thank you. Mr. Wood, you had some rebuttal. As a court knows, if a court has a qualified immunity issue before it, it can skip prong one and go straight to prong two for an analysis just to see, as a bench stone, is there any law out there that would tell the defendant that what he was doing was a constitutional violation? A court can find no constitutional violation under prong one, and a prong two analysis is not necessary, like the court did here on the excessive force claim. They found that the excessive force was a constitutional use of force, and therefore did not do a prong two analysis. But as to probable cause in the entry, the court did not do any analysis with regard to that, instead just said, this one disputed fact precludes the finding of probable cause and qualified immunity, and that was it. And so not only did the plaintiff fail in their burden to set forth the clearly established law, the court provided no analysis as well. The one case they did talk about, U.S. versus Belisle, factually is so dissimilar from the facts of this case. That was a Topeka case where the police are called, a man's got a gun in his apartment, the wife runs to the neighbor's house, the neighbor takes the child in, a detective comes. And they get in and arrest Mr. Belisle for possession of a firearm, AFCF. So, I mean, the facts, even if they had analyzed that, the facts are so different, and as we know, bond versus telecall requires us, and all the progeny before that, that there must be a factually similar case. Not identical, but similar, and that courts cannot apply that standard at too high a generality. So, in concluding, I would like to ask the court to reverse the district court on the issue of the unlawful entry and find that defendant Marcus Beal is entitled to qualified immunity. Thank you. Thank you, counsel. The case shall be submitted, counsel excused. We appreciate your arguments.